IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


TRAN Q. NGUYEN,                    )
                                   )
                  Plaintiff,       )
                                   )
vs.                                )        Case No. 06-1180-MLB
                                   )
MICHAEL J. ASTRUE,[1]              )
Commissioner of                    )
Social Security,                   )
                                   )
                  Defendant.       )
_____)


RECOMMENDATION AND REPORT


     This is an action reviewing the final decision of the
Commissioner of Social Security denying the plaintiff disability
insurance benefits and supplemental security income payments.
The matter has been fully briefed by the parties and has been
referred to this court for a recommendation and report.

     The court's standard of review is set forth in 42 U.S.C.
§ 405(g), which provides that "the findings of the Commissioner
as to any fact, if supported by substantial evidence, shall be

_____

     [1]On February 12, 2007, Michael J. Astrue was sworn in as the
Commissioner of Social Security.  In accordance with Rule
25(d)(1) of the Federal Rules of Civil Procedure, Michael J.
Astrue is substituted for Commissioner Jo Anne B. Barnhart as the
defendant.  In accordance with the last sentence of 42 U.S.C. §
405(g), no further action is necessary.

1

conclusive." The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards. Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994). Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the conclusion. The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion. Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989). Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted. Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational. Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992). The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met. Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can

establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA). The claimant's physical or mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability. If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further. At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity." At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled. If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to

3

step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled.  If the claimant survives step four, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis.  Nielson v. Sullivan, 992 F.2d 1118, 1120 (1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy.  Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993).  The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC).  This RFC assessment is used to evaluate the claim at both step four and step five.  20 C.F.R. § 404.1520(a)(4); 404.1520(f,g).

Administrative law judge (ALJ) Harry Malloy issued his decision on November 15, 2005 (R. at 13-20).  At step one, the ALJ found that plaintiff had not performed substantial gainful

activity since August 30, 2001 (R. at 15).  At step two, the ALJ
found that plaintiff has the following severe impairments:
diabetes, depression, and back pain (R. at 15).  At step three,
the ALJ determined that plaintiff's impairments do not meet or
equal a listed impairment (R. at 17).  After establishing
plaintiff's RFC, the ALJ determined at step four that plaintiff
can perform past relevant work as a sewing machine mechanic (R.
at 19).  In the alternative, at step five, the ALJ found that
plaintiff could perform other occupations existing in significant
numbers in the national economy.  Therefore, the ALJ concluded
that plaintiff was not disabled (R. at 20).

**I.  Did the ALJ give proper consideration to the opinions of Dr.
Schell?**

A treating physician's opinion about the nature and severity
of the claimant's impairments should be given controlling weight
by the Commissioner if well supported by clinical and laboratory
diagnostic techniques and if it is not inconsistent with other
substantial evidence in the record.  Castellano v. Secretary of
Health & Human Services, 26 F.3d 1027, 1029 (10th Cir. 1994); 20
C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  When a treating
physician opinion is not given controlling weight, the ALJ must
nonetheless specify what lesser weight he assigned the treating
physician opinion.  Robinson v. Barnhart, 366 F.3d 1078, 1083
(10th Cir. 2004).  A treating source opinion not entitled to

5

controlling weight is still entitled to deference and must be

weighed using all of the following factors:

(1) the length of the treatment relationship and the frequency of
examination;
(2) the nature and extent of the treatment relationship,
including the treatment provided and the kind of examination or
testing performed;
(3) the degree to which the physician's opinion is supported by
relevant evidence;
(4) consistency between the opinion and the record as a whole;
(5) whether or not the physician is a specialist in the area upon
which an opinion is rendered; and
(6) other factors brought to the ALJ's attention which tend to
support or contradict the opinion.

Watkins v. Barnhart, 350 F.3d 1297, 1300-1301 (10th Cir. 2003).

    After considering the above factors, the ALJ must give good

reasons in his decision for the weight he ultimately assigns the

opinion.  If the ALJ rejects the opinion completely, he must then

give specific, legitimate reasons for doing so.  Watkins, 350

F.3d at 1301.

    An ALJ must evaluate every medical opinion in the record,

although the weight given to each opinion will vary according to

the relationship between the disability claimant and the medical

professional.  Hamlin v. Barnhart, 365 F.3d 1208, 1215 (10th Cir.

2004).  In the determination of issues reserved to the

Commissioner, such as opinions regarding: whether an impairment

meets or equals a listing, plaintiff's RFC, whether a plaintiff

can do past relevant work, how age, education, and work

experience apply, and whether a plaintiff is disabled, treating

source opinions are not entitled to special significance or

controlling weight.  Soc. Sec. Rul. 96-5p, (Medical Source
Opinions on Issues Reserved to the Commissioner), 1996 WL 374183,
at *2.  However, even on issues reserved to the Commissioner,
including the RFC determination and the ultimate issue of
disability, opinions from any medical source must be carefully
considered and must never be ignored.  Social Security Ruling
(SSR) 96-5p, 1996 WL 374183 at *2-3.  It is clear legal error to
ignore a medical opinion.  Victory v. Barnhart, 121 Fed. Appx.
819, 825 (10th Cir. Feb. 4, 2005).  It is reversible error for
the ALJ not to discuss uncontroverted evidence he chooses not to
rely on, as well as significantly probative evidence he rejects.
Grogan v. Barnhart, 399 F.3d 1257, 1266 (10th Cir. 2005).

In his decision, the ALJ discussed the treatment notes and
evaluation of Dr. Schell as follows:

> The record documents that Dr. Schell saw the
> claimant between January 19, 2004 and May 11,
> 2005 for depression, on about six occasions.[2]
> On January 16, 2005, Dr. Schell gave the
> claimant a current a Global Assessment of
> Functioning (GAF) of 35, which corresponds to
> some impairment in reality testing or
> communication or major impairment in several
> areas, such as work or school, family
> relations, judgment, thinking or mood, as
> defined in the Diagnostic and Statistical
> Manual of Mental Disorders - Fourth Edition
> (DSM-IV), which is published by the American
> Psychiatric Association.  The undersigned does

---

[2]In fact, Dr. Schell's records show he had nine contacts
with the plaintiff between January 19, 2004 and January 13, 2005
(R. at 222-232, 270-287).  In addition, Dr. Schell prepared an
evaluation dated January 16, 2005 (R. at 265-269).

> not give controlling weight to Dr. Schell's
> opinion because the doctor's opinion is
> primarily based on the claimant's subjective
> symptoms which are not entirely credible.

(R. at 19).  The ALJ determined that there was no need to
recontact Dr. Schell for further information (R. at 19).  The
only other mention of Dr. Schell in the ALJ decision was as
follows: Dr. Hutchison (a medical expert who testified at the
hearing after reviewing the records) "reported that Dr. Schell
diagnosed the claimant with bipolar which is not supported by the
evidence" (R. at 17).

     First, the ALJ did not accurately state the length of the
treatment relationship and the frequency of examination.  The ALJ
stated that Dr. Schell saw plaintiff on "about" 6 occasions over
a 16 month period.  In fact, the record shows that Dr. Schell saw
plaintiff on 9 occasions over a 12 month period.  Second, the ALJ
never discussed the nature and extent of the treatment
relationship.  Third, the ALJ did not mention that Dr. Schell is
a licensed psychologist (R. at 269).

     Particularly troubling to the court is that the only
discussion by the ALJ of Dr. Schell's records was to mention the
GAF score and that Dr. Hutchison did not agree with Dr. Schell's
diagnosis of bipolar disorder.  Not mentioned by the ALJ was that
Dr. Schell prepared a psychological evaluation on January 16,
2005.  Dr. Schell's evaluation mentioned that the plaintiff (a

8

South Vietnamese native) was in a Viet Cong prison camp from 1975 until 1978 or 1979.  Dr. Schell noted that plaintiff had auditory hallucinations on a daily basis (described as a posttraumatic stress disorder type of hallucination) and visual hallucinations about once or twice a week (R. at 266).  Dr. Schell found plaintiff suffered from moderate depression about 60% of the time and moderate apathy about 90% of the time.  He found that plaintiff was socially isolated, had a moderate problem with low self-esteem and feeling hopeless and helpless, a moderate problem with feeling worthless and guilty, a severe problem with psychomotor retardation, a moderate problem with psychomotor agitation, a severe problem with poor concentration and indecisiveness, severe insomnia, a severe loss of energy every day, and severe nightmare disorders.  Dr. Schell also noted various manic symptoms (R. at 266-267).

Dr. Schell stated that plaintiff can do light work for 15-30 minutes, and then has to rest for 20-30 minutes, and can do about 2 hours of light physical work per day at about 3/4 of the normal work rate.  He found that plaintiff can do 30 minutes of sedentary work, and then has to rest for 20 minutes, and can do about 3 hours of this work a day at about 3/4 of the normal work rate (R. at 267).

Dr. Schell found that plaintiff's depression symptoms of apathy, low energy, slowed response rate, and indecisiveness, and

symptoms of irritability, racing thoughts, severe anxiety, pain disorder, poor memory due to beatings he received by the Viet Cong, poor concentration, inattentiveness, easy distractibility and easy frustration interfere with his ability to work.  Dr. Schell concluded by stating that plaintiff has a moderate deficit in activities of daily living, a moderate deficit in social functioning, a severe problem in task completion with severe problems in poor concentration and limited persistence, and a moderate problem with slow pace (R. at 267).  None of these findings contained in Dr. Schell's assessment were discussed by the ALJ.

Although an ALJ is not required to discuss every piece of evidence, the ALJ must discuss significantly probative evidence that he rejects.  Clifton v. Chater, 79 F.3d 1007, 1009-1010 (10th Cir. 1996).  The court finds that it is clear error for the ALJ to only mention Dr. Schell's GAF score and that Dr. Hutchison disputed a diagnosis by Dr. Schell, but to fail to even discuss any of the other contents of Dr. Schell's evaluation, let alone determine what weight to give to Dr. Schell's many findings in regards to plaintiff's mental disorders and work assessment. This court may not properly weigh this large body of evidence in the first instance.  Neil v. Apfel, 156 F.3d 1244 (table), 1998 WL 568300 at *3 (10th Cir. Sept. 1, 1998).

As noted earlier, the ALJ mentioned that Dr. Hutchison did

10

not agree with Dr. Schell's diagnosis of bipolar disorder. Instead, Dr. Hutchison diagnosed major depressive disorder and post-traumatic stress disorder, which appears to be based on information contained in Dr. Schell's evaluation (R. at 36-37, 266-267).  However the ALJ's step two findings only included depression as a severe impairment, but, without explanation, did not include Dr. Hutchison's finding of post-traumatic stress disorder.  On remand, the ALJ should make a determination of whether post-traumatic stress disorder is a severe impairment, and its impact, if any, on plaintiff's RFC.

Because this case is being remanded, the court will mention another issue that should be addressed when this case is remanded although it was not discussed by the parties in their briefs. This issue concerns the RFC findings regarding plaintiff's mental limitations.  At step three, the ALJ found that plaintiff had mild restrictions in daily activities, moderate difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence, and pace, and no episodes of decompensation (R. at 17); these findings duplicate the opinions expressed by Dr. Hutchison (R. at 38).  These limitations were included in the hypothetical question to the vocational expert (R. at 41).

According to SSR 96-8p:

> The psychiatric review technique. The
> psychiatric review technique described in 20

11

CFR 404.1520a and 416.920a and summarized on the Psychiatric Review Technique Form (PRTF) requires adjudicators to assess an individual's limitations and restrictions from a mental impairment(s) in categories identified in the "paragraph B" and "paragraph C" criteria of the adult mental disorders listings. **The adjudicator must remember that the limitations identified in the "paragraph B" and "paragraph C" criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process. The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments, and summarized on the PRTF.**

SSR 96-8p, 1996 WL 374184 at *4 (emphasis added).  SSR rulings are binding on an ALJ.  20 C.F.R. § 402.35(b)(1); Sullivan v. Zebley, 493 U.S. 521, 530 n.9, 110 S. Ct. 885, 891 n.9, 107 L. Ed.2d 967 (1990); Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993).  Contrary to the clear requirements of SSR 96-8p, the ALJ only identified the more general limitations for purposes of making findings at step 3, but failed to make the more detailed assessment required for the RFC assessment at steps four and five.  Neither Dr. Hutchison or Dr. Moeller provided a more detailed mental assessment, and the somewhat more detailed opinions expressed by Dr. Schell were not discussed by the ALJ.

The only detailed mental assessment discussed by the ALJ was the medical source statement (mental) prepared by Martha

Kuhlmann, an advanced registered nurse practitioner (ARNP), who found plaintiff not significantly limited in 5 categories, moderately limited in 7 categories and markedly limited in 8 categories (R. at 263-264).  The ALJ did not give the opinion much weight because it was "not consistent with the evidence in its entirety" (R. at 19).  First, the ALJ never discussed whether plaintiff was treated by Ms. Kuhlmann, or the length, frequency, nature and extent of a treatment relationship if one in fact existed.[3]  Second, the court also finds no basis for the ALJ's determination that Ms. Kuhlman's opinion is not consistent with the evidence in its entirety since the ALJ does not mention any other detailed mental assessment which differs from the findings of Ms. Kuhlman.  Furthermore, the ALJ merely makes a conclusory statement that Ms. Kuhlman's opinions are not consistent with the evidence in its entirety without offering any explanation of the basis for that finding.  Such a summary conclusion is beyond meaningful judicial review.  <u>Clifton v. Chater</u>, 70 F.3d at 1009. For these reasons, on remand, the ALJ will need to obtain additional evidence and make more detailed findings in regards to plaintiff's mental impairments for purposes of the RFC determination.  The ALJ should also ascertain the basis for the findings of Ms. Ruhlman (i.e., was it based on a treatment

---

[3]The court would note that Ms. Kuhlman's name appears on two documents found in the medical records (R. at 290, 292).

relationship, and if so, the length, frequency, nature and extent of that relationship), and compare her detailed mental assessment with those of other treating or consultative professionals.

IT IS THEREFORE RECOMMENDED that the decision of the Commissioner be reversed, and that the case be remanded for further proceedings (sentence four remand) for the reasons set forth above.

Copies of this recommendation and report shall be provided to counsel of record for the parties.  Pursuant to 28 U.S.C. § 636(b)(1), as set forth in Fed.R.Civ.P. 72(b) and D. Kan. Rule 72.1.4, the parties may serve and file written objections to the recommendation within 10 days after being served with a copy.

Dated at Wichita, Kansas, on April 26, 2007.


s/John Thomas Reid
JOHN THOMAS REID
United States Magistrate Judge

14